1  Denise Mcloud,
2  Brian Baran,
   Kristopher Anderson Francois,
3  Mercedes Juanita Flores,
   Tim Rucker,
4  Wilbert Ray Fields,
5  John Clay
   Mailing Address: Santa Rosa General Delivery
6  Mailing Address: 610 Wilson Street, Santa Rosa CA 95401
7  Pro Se

FILED
JUL 25 2022
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

[*Select one location: San Francisco / Oakland / San Jose / Eureka*]

Denise Mcloud, Brian Baran, Kristopher Anderson Francois, Mercedes Juanita Flores, Tim Rucker, Wilbert Ray Fields, John Clay

vs.

COUNTY OF SONOMA, COUNTY ADMINISTRATOR SHERYL BRATTON, SONOMA COUNTY REGIONAL PARKS, SONOMA COUNTY REGIONAL PARK DIRECTOR BERT WHITAKER, CITY OF SANTA ROSA, CITY OF SANTA ROSA MANAGER MARASKESHIA SMITH. DOES 1-10

Defendant

Case Number: CV22-4284 SK

*Emergency Application for Temporary Restraining Order and Preliminary Injunction to Immediately Enjoin The County of Sonoma and its Co-Conspirators From Destroying the Joe Rodota Trail on July 26th*

*McCloud, et al. v. County of Sonoma, et al.*

# Table of Authorities

1. Stuhlbarg Intl. Sales v. John D. Brush Co., 240 F.3d 832 (9th Cir. 2001)
2. Winter v. Natural Res. Defense Council, Inc., 555 U.S. 7, 20 (2008)
3. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011)
4. Monterey Mech. Co. v. Wilson, 125 F.3d 702, 715 (9th Cir. 1997)
5. Nelson v. NASA, 530 F.3d 865, 882 (9th Cir. 2008)
6. Nat'l Aero. & Space Admin. v. Nelson, 56 U.S. 134 (2011)
7. Kennedy v. City of Ridgefield, 439 F.3d 1055, 1062 (9th Cir. 2006
8. Munger v. City of Glasgow, 227 F.3d 1082 (9th Cir. 2000)
9. White v. Rochford, 592 F.2d 381 (7th Cir. 1989)
10. Sylvia Landfield Tr. v. City of L.A., 729 F.3d 1189, 1195 (9th Cir. 2013)
11. Martin v. City of Boise, 902 F. 3d 1031, 1048 (9th Cir. 2018).
12. Collier v. Menzel, 221 CalRptr. 110 (Ct. App. 1985).

**Local Related Cases and Persuasive Authorities**

13. Sausalito/Marin County Chapter of the California Homeless Union et al vs City of Sausalito et al 21-cv-01143-EMC
14. Marin County Homeless Union et al v. City of Novato et al (4:21-cv-05401)
15. Naretto et al v. City of Petaluma et al (3:21-cv-10027)

**Laws Defendants Are Using To Criminalize Us While Living On Public Land And Not Providing Us With Alternative Shelter**

Sonoma County Code §20-26

California Penal Code §647(e)

California Penal Code §602(m)

California Penal Code §602(o)

*McCloud, et al. v. County of Sonoma, et al.*

## Introduction

1. We, the plaintiffs in the above case bring this motion for temporary restraining order and preliminary injunction against all defendants to RESTRAIN them from:
    a. Removing us from the Joe Rodota Trail until Defendants sit down and reason with us on a workable solution that is acceptable to both parties and abides by United States and California Constitution; and
    b. Destroying property and displacing residents from our camp at the Joe Rodota Trail on July 26, 2022.

2. On July 22nd, without offers of shelter and without genuine offers of property storage, a squadron of Sonoma County Regional Park Rangers flooded our modest encampment on the Joe Rodota trail threatening to arrest in on July 26th if we did not move and posting us with notices [See Dec McCloud, Exhibit A] threatening us with a battery of criminal charges if we did not move even though they did not offer accessible shelter.

3. The Bay Area is currently in the midst of a surge of BA4 and BA5 variants of the COVID 19 which according to water tests is the larges COVID surge yet[1]. While deaths have significantly reduced thanks to provision of vaccines, many people are still reporting long COVID – a condition that the scientific community is still learning about but which seems to cause permanent brain damage and cardiovascular harm that is irreparable.

---

[1] *San Francisco Chronicle*, "Bay Area wastewater surveys suggest COVID surge could be biggest yet". July 14th 22. https://www.sfchronicle.com/health/article/Wastewater-surveys-suggest-COVID-surge-could-be-17306240.php
*McCloud, et al. v. County of Sonoma, et al.*

4. For unhoused people many of whom have medical issues the danger of death and irreparable injury from COVID 19 is significant. Last year, a resident died of COVID 19 at the Sam Jones homeless shelter.[2]

5. Because of the peril faced by unhoused people, the Center for Disease Control is offering authoritative guidance jurisdictions not to break up encampments of unsheltered people due to COVID 19 to prevent dispersal of COVID 19 and breakage of access to service providers and networks of support provided by encampment communities which are likely to cause irreparable harm or death from COVID 19. [3]

6. In the context of a COVID surge and public health guidance, it is reckless for the County of Sonoma and its department Sonoma County Regional Parks to flout the authoritative health guidance by evicting an encampment of around 40 people at the Joe Rodota trail in Santa Rosa on July 26th without alternative shelter or apparent offers to store peoples belongings or to find other places they can survive.

7. Regional Parks rangers have been destroying people's property and have not been offering alternative shelter. For this most recent sweep, in spite of rose-tinted press releases, the Regional Parks and County of Sonoma are not offering shelter to the people they are displacing and planning on arresting who do not leave with misdemeanor charges even without offers of shelter. They know that they do not have alternative shelter and have admitted so publicly at a Board of Supervisors

---

[2] *Press Democrat,* "Sam Jones Shelter Resident Dies of Covid 19 Complications" July 28th, 2021. https://www.pressdemocrat.com/article/news/sam-jones-homeless-shelter-resident-dies-of-covid-19-complications/
[3] Most Current Center for Disease Control COVID 19 Guidance on People Experiencing Unsheltered Homelessness - https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-shelters/unsheltered-homelessness.html
*McCloud, et al. v. County of Sonoma, et al.*

meeting. They do not have a genuine plan on storing people's property based on our past experiences in which Regional Park Rangers wantonly destroyed our tents, blanks, survival gear, food, water, and other essentials of living.

8. 

9. On Friday, July 22nd our encampment was ambushed when our encampment was served eviction notices from the County of Sonoma's Office of Regional Parks to vacate our encampment by July 26th at 8am. [See Exhibit A Decl. of McCloud].

10. Defendants are not offering immediately accessible shelter. On their written notice they are threatening to cite and arrest us. This is a violation of our Fourth and Eighth Amendment Rights under the *Martin V Boise* doctrine.

11. Defendants are not offering any genuine storage for our property which we cannot reasonably move all at once. They give no address for where our property will be

*McCloud, et al. v. County of Sonoma, et al.*

stored, or a way to contact defendants to retrieve our property. This violates the doctrine under *Lavan v City of Los Angeles.*

12. Furthermore, Defendants are not responding to requests for reasonable accommodations in violation of Title II of the Americans with Disabilities Act and are ignoring us.

13. Adding to the bad faith, plaintiffs are falsely representing to the public that we are being provided with alternative shelter, adequate property storage, and other services.

14. On July 22nd, Sonoma County issued a press release stating they were clearing our community and providing alternative shelter.

15. On July 22nd, the Press Democrat posted the following video on their youtube channel show Sonoma County Rangers issuing eviction notices against campers to leave by Tuesday.



*McCloud, et al. v. County of Sonoma, et al.*

**Procedural Background**

16. The standards for a TRO are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that will result if an injunction is not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has clarified that its "sliding scale" approach to preliminary injunctive relief is still viable. That is, if the plaintiff can demonstrate the risk of irreparable injury, under the sliding scale test, the strength of the plaintiff's showing on the merits necessary to secure a preliminary injunction varies with the degree to which the balance of hardship tips in its favor. In other words, preliminary injunctive relief "'is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

**I. Likelihood Of Success on The Merits Under *Martin V Boise***

17. We are likely to succeed under the merits of *Martin v Boise,* because inspite of Defendants representations in the media – none of us have been offered alternative and accessible shelter [See Declarations Anderson ¶5 Dec Rucker ¶12 Brian Barnard ¶3 Francois ¶5. Dec John Clay ¶9 ¶10 Dec Michael Titone ¶4¶21. In spite of the lack of accessible shelter, defendants are unlawfully threatening arrest [See Dec McCloud at Exhibit A].

*McCloud, et al. v. County of Sonoma, et al.*

18. As is clear in Exhibit A, Defendants are threatening a litany of criminal charges to vacate campers without any alternative shelter available in violation of *Martin v Boise*

19. Furthermore, the Northern District has recognized that Covid 19 Pandemic and the Center for Disease Control Guidance creates dangers for unhoused people See *Sausalito Homeless Union v City of Sausalito* and *Novato Homeless Union v City of Novato*. When this court has lifted injunctions, it has only been after government agencies have done so in a manner where people receive placement and state created danger is mitigated See *Narretto et al v City of Petaluma*. This court just last week issued a restraining order protecting 200 campers in Oakland See *Blain et al v Newsome et al*.

**We Are Likely To Succeed On the Merits of *Lavan v City of Los Angeles* because Defendants Are Not Storing Peoples Property And Are In Fact Regularly Destroying Our Property**

20. Defendants and those acting in concert with them regularly destroy peoples property. For example, they bulldozed Kristophers last camp and the camp before that [See Dec. Kristopher Francois ¶6 ¶14 Dec Rucker ¶12 Barnard ¶4 ¶7 Francois ¶9 ¶14 Denise McCloud ¶7¶8 Dec. Mercedes ¶4 ¶5¶7 Dec Michael. Titone ¶20

**We Are Likely To Succeed With Title II of Americans With Disabilities Act because Defendants Are Ignoring Requests for Accommodations**

21. We are likely to succeed on the merits of the Americans with Disability Act because defendants are willfully and wantonly ignoring the accommodation requests of plaintiffs and have been doing so for a very long time.

22. Michael Titone, a volunteer who helps plaintiffs notes that their requests for reasonable accommodations are constantly denied Dec Titone ¶6-19.

23. Tim Rucker asked for reasonable accommodations on May 10 id ¶3. It was ignored, and he filed a grievance, which defendants did not satisfactorily resolve ¶4. Even though he has severe PTSD ¶14 and has knee problems that make him

*McCloud, et al. v. County of Sonoma, et al.*

need a walker ¶15. The Sam Jones shelter, which is not evidently available and where people have died from COVID 19 is not accessible for Mr. Rucker who has tried it before ¶17.

24. Brian Barnard submitted a request for reasonable accommodations for his cancer, PTSD, which has been ignored Dec Barnard ¶10.

25. Francois has anxiety and PTSD and requested reasonable accommodations which has not been responded to by the county Dec Francois ¶4 and has not been offered a placement.

26. Denise McCloud also asked for reasonable accommodation and has been ignored [Dec McCloud ¶10].

27. Mercedes Juanita Flores has also asked for reasonable accommodations under the ADA, and has been ignored. [Dec Flores ¶6 & Exhibit A].

**State Created Danger Due Process Claim**

28. The Ninth Circuit recognizes a substantive due process claim where there is a "state-created danger" – i.e., where a state actor "'affirmatively place[s] an individual in danger' by acting with 'deliberate indifference to [a] known or obvious danger in subjecting the plaintiff to it.'" *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006); see also id. at 1061 (noting that state action affirmatively places a plaintiff in a position of danger "where state action creates or exposes an individual to a danger which he or she would not have otherwise faced).

29. But that is not the only situation where there is a state-created danger. In Kennedy itself, the Ninth Circuit cited to cases where the state-created danger was, effectively, from the environment. See id. at 1061 n.1 (citing *White v. Rochford*, 592 F.2d 381 (7th Cir. 1989), where "defendants left helpless minor children subject to inclement weather and great physical danger without any apparent justification'"); id. at 1062 (citing *Munger v. City of Glasgow*, 227 F.3d 1082 (9th Cir. 2000), which held that "police officers could be held liable for the

hypothermia death of a visibly drunk patron after ejecting him from a bar on a bitterly cold night"). In this case during COVID-19 Pandemic, the cities threats of evicting me from my campsite also significantly increase our risk of being irreparably harmed or killed by COVID-19 by making it impossible for me to comply with COVID -19 guidelines to shelter in place.

30. Plaintiff Brian Bernard currently has cancer ¶5 and is stroke survivor ¶5. He stayed at Sam Jones for six months and seriously tried it, it but it didn't work out ¶6.

31. When Ms. McCloud was last pushed out, a good friend of hers died when they were forced to camp in an unsafe location. [See Dec McCloud ¶6].

## II. Irreparable Harm

**Irreparable Harm**

32. The Northern District has recognized that Covid 19 Pandemic and the Center for Disease Control Guidance creates dangers for unhoused people. See *Sausalito Homeless Union v City of Sausalito* and *Novato Homeless Union v City of Novato*. When this court has lifted injunctions, it has only been after government agencies have done so in a manner where people receive placement and state created danger is mitigated *See Narretto et al v City of Petaluma*. This court just last week issued a restraining order protecting 200 campers in Oakland *See Blain et al v Newsome et al.*

33. The Center for Disease Control authoritative guidance in Exhibit A states that "If individual housing options are not available, allow people who are living unsheltered or in encampments to remain where they are. Clearing encampments can cause people to disperse throughout the community and break connections with service providers. This increases the potential for infectious disease spread."

34. Catching COVID, even if immunized, presents both a high risk of death and permanent brain injury.

*McCloud, et al. v. County of Sonoma, et al.*

35. Plaintiff Tim Rucker is especially likely to suffer irreparable harm or death by plaintiffs actions. He has just gotten out of surgery for [Dec Rucker ¶9]. The duress that caused his medical emergency was caused by a camp eviction by defendants [id ¶10]. Mr. Rucker has a knee injury that seriously handicaps him, and if he is forced to move it may cause his knee to be irreparably injured and increase his risk of ultimately losing the ability to walk. Furthermore, Mr. Rucker is recovering from a serious bacterial infection that required a 2.5 hour surgery. ¶10 He has to be on intravenous anti-bacterial medication for 6 weeks. ¶11. Now of all times, defendants actions are likely to kill us. It is unclear if Defendants will follow through on their promises of a bed at Los Guilicos. [Dec ¶11]

36. Mr. Francois is likely to experience violence if the camp evaporates Dec Francois ¶11.

**Constitutional Violations are Irreparable Harm**

37. The Ninth Circuit has held a violation of a person's constitutional rights may also constitute irreparable injury see *Monterey Mech. Co. v. Wilson, 125 F.3d 702, 715 (9th Cir. 1997)* (noting that "'an alleged constitutional infringement will often alone constitute irreparable harm'"); *Nelson v. NASA, 530 F.3d 865, 882 (9th Cir. 2008)* (stating that, "[u]nlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm"), rev'd on other grounds, *Nat'l Aero. & Space Admin. v. Nelson, 56 U.S. 134 (2011)*.

38. Here there is a clear violation of eighth amendment rights under *Martin v Boise* [See Declarations Anderson ¶5 Dec Rucker ¶12 Brian Barnard ¶3 Francois ¶5. Dec John Clay ¶9¶10 Dec McCloud ¶ Dec Flores ¶4¶5¶9. In spite of the lack of accessible shelter, defendants are unlawfully threatening arrest [See Dec McCloud at Exhibit A] in violation of their Eighth Amendment Rights under *Martin* doctrine.

*McCloud, et al. v. County of Sonoma, et al.*

39. Further, there are clear violations of 4th Amendment rights against unlawful search and seizure that are occuring.

**The Breaking Up of The Encampment Will Break Up Social Networks of Physical Protection that Will Put Us At Risk of Being Victims of Crime, Assault, Rape, and Homicide.**

40. The Ninth circuit recognizes state-created danger that arises from "private violence." Id. For example, in *Kennedy v. City of Ridgefield*, the plaintiff filed suit against a city and a police officer after her neighbor's son – whom she had told the police had molested her child – shot her and shot and killed her husband. See id. at 1058 (noting that, according to the plaintiff, the officer promised to give notice "prior to any police contact with the Burns family about her allegations" but failed to give advance notice; also, after belatedly telling the plaintiff about his contact with the neighbor, the officer gave the assurance that the policy would patrol the area around her house and the neighbor's house).

41. Many campers are afraid of private violence in the community John Grey ¶5. Denise McCloud's good friend was killed after being swept Dec McCloud ¶6. The breaking up the encampment will break people from protecting one another [See Barnard ¶14].

### III.   Balance of Equities

**42.** The Destruction of our community is an issue of life and death for us. For the city, it is a relatively minor inconvenience that that there are many solutions for. Defendants have done everything to harass us but has never met with us to work on a real solution.

**43.** Defendants persistent ignoring of our needs strongly suggests the need for the parties to be ordered into settlement so we can find a mutual solution that works for everyone.

*McCloud, et al. v. County of Sonoma, et al.*

### IV. Public Interest

44. An injunction will serve the public interest by giving assistance to homeless individuals, reducing my dependency on public benefits, and preserving my Fourth Amendment rights. *Victor Valley Family Res. Ctr. v. City of Hesperia*, 2016 WL 3647340, at *7 (C.D. Cal. July 1, 2016); see also, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). 4:18-cv-01239-JSW

45. Someone takes the trash out of the camp daily. We are responsible camp and we do not unduly burden the city. Local businesses allow us to use their bathrooms and we have a positive neighborhood.

46. Plaintiffs are not blocking the trail [See Declaration see Dec. Rucker ¶17 Francois ¶10.

47. "I have promised to protect Nina Butterfly and Neecy. We take care of each other in this area of the camp" ¶Barnard 14.

48. Francois does store runs for the camp and keeps people provisioned with life sustaining food and water ¶11.

**Conclusion**

49. Defendants are violating Ninth Circuit Precedent in *Martin v Boise* and *Lavan v City of Los Angeles* by respectively criminalizing us for being unhoused and not providing alternative shelter and also not storing our belongings.

50. Defendants' reckless actions are likely to cause irreparable injury or death. It will cause irreparable violation of our civil rights.

51. Defendants are ignoring and refusing to accommodate residents with disabilities who are asking for reasonable accommodations.

52. The balance of equities tips sharply in our favor and the injunction is in the public interest.

53. Therefore, the court must grant for the TRO and order settlement discussions so that a reasonable solution can be found among the parties.

*McCloud, et al. v. County of Sonoma, et al.*

1 | <u>SEE ATTACHED EXHIBIT H-1 FOR SIGNATURE PAGE FOR MOTION FOR TRO
2 | AND PRELIMINARY INJUNCTION</u>

*McCloud, et al. v. County of Sonoma, et al.*