ROBERT H. PITTMAN #172154
County Counsel
JOSHUA A. MYERS #250988
Chief Deputy County Counsel
MATTHEW R. LILLIGREN #246991
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
Facsimile: (707) 565-2624
E-mail: joshua.myers@sonoma-county.org
E-mail: matthew.lilligren@sonoma-county.org

Attorneys for Defendants
COUNTY OF SONOMA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE MCCLOUD, BRIAN BARAN, KRISTOPHER ANDERSON FRANCOIS, MERCEDES JUANITA FLORES, TIM RUCKER, WILBERT RAY FIELDS, AND JOHN CLAY<br><br>　　　Plaintiffs,<br><br>vs.<br><br>COUNTY OF SONOMA, COUNTY ADMINISTRATOR SHERYL BRATTON, SONOMA COUNTY REGIONAL PARKS, SONOMA COUNTY REGIONAL PARK DIRECTOR BERT WHITAKER, CITY OF SANTA ROSA, CITY OF SANTA ROSA MANAGER MARASKESHIA SMITH. DOES 1-10<br><br>　　　Defendants.<br>　　　　　　　　　　　　　　　　　／ | Case No. 22-cv-04284-HSG<br><br>**COUNTY OF SONOMA'S SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' REQUEST FOR TEMPORARY RESTRAINING ORDER**<br><br>Date:　July 27, 2022<br>Time:　10:00 a.m.<br>Court:　Courtroom 2, 4th Floor<br>　　　　1301 Clay Street<br>　　　　Oakland, CA<br><br>Judge:　Hon. Haywood S. Gilliam, Jr. |

## **INTRODUCTION**

　　　As directed by the Court at the hearing on this matter on July 27, 2022, the County of

Sonoma hereby submits the following Supplemental Opposition to Plaintiff's Emergency

1  Application for Temporary Restraining Order and Preliminary Injunction. (*See* Dkt. #6.) This
2  Supplemental Opposition, and the accompanying declarations, provide the information requested
3  by the Court on July 27, 2022, to wit:

4  - The County of Sonoma's protocol for clearing encampments, including:
5    - What type of notice is provided to people at an encampment, including the
6      current one on the Joe Rodota Trail?
7    - How are people informed of how their property is stored and how they can
8      get the property back?
9    - What housing options are available to people at the encampment, how
10     long people can stay at those locations, and what services are offered
11     while people are at these transitional housing locations?

12  The accompanying declarations show the County of Sonoma has complied with its
13  obligations under *Martin v. Boise*[1] and *Lavan v. City of Los Angeles*[2] when noticing the expected
14  clearing of the encampments where Plaintiffs have recently stayed, offering adequate shelter and
15  storage of personal property, and it will follow its established protocol for the actual clearing.
16  The County has engaged in extensive outreach to the people in the encampment, including
17  Plaintiffs, and has offered appropriate shelter and housed many of those in the encampment.
18  Importantly, all Plaintiffs have been placed in appropriate housing – which they all voluntarily
19  accepted. The County will follow its encampment clearing protocol, which was developed and
20  approved in the context of another federal lawsuit regarding clearing homeless encampments.

21  Further, the personal property of all members of the encampment is and will be dealt with
22  in compliance with constitutional requirements. People whose property is stored by the County
23  receive advance notice of where the property will be stored, how long it will be stored there, and
24  how they can retrieve their property.

---

[1] 920 F.3d 584, 617 (9th Cir. 2019).

[2] 693 F.3d 1022 (9th Cir. 2012).

1   Plaintiffs' Emergency Application for Temporary Restraining Order and Preliminary
2 Injunction should be dissolved.  Plaintiffs cannot meet their burden to show (1) a likelihood of
3 success on the merits of their claims, or (2) a likelihood of irreparable harm if the injunction is
4 not issued.  Further, the balance of equities favors allowing the County to move forward with the
5 planned clearing of the encampment because this public trail should be put back to public use as
6 soon as possible.

7 **PROCEDURAL HISTORY**

8   On or about July 25, 2022, Pro se Plaintiffs Denise McCloud, Brian Baran, Kristopher
9 Anderson Francois, Mercedes Juanita Flores, Tim Rucker, Wilbert Ray Fields, and John Clay
10 ("Plaintiffs"), filed their Complaint Pursuant to 42 USC 1983 Filed Concurrently with
11 Emergency Application for Temporary Restraining Order and Preliminary Injunction. (Dkt. #1.)
12 On the same day, Plaintiffs filed an Emergency Application for Temporary Restraining Order
13 and Preliminary Injunction to Immediately Enjoin the County of Sonoma and its Co-
14 Conspirators from Destroying the Joe Rodota Trail on July 26th.  (Dkt. #6.)
15   On or about July 25, 2022, the Court entered an Order Granting Temporary Restraining
16 Order.  (Dkt. #15.)  The Court held that based on the uncontested allegations in the Complaint
17 and Emergency Application, the Plaintiffs met their burden to obtain a temporary restraining
18 order "solely to maintain the status quo until the earliest possible hearing on the merits of the
19 TRO request.  Defendants are enjoined from proceeding with the clearing and eviction of those
20 currently residing on the Joe Rodota Trail …."  (Dkt. #15, at pg. 2.)  The court set a hearing on
21 Plaintiff's motion for a temporary restraining order for July 27, 2022, at 10:00 am, and ordered
22 all parties to be present in-person.
23   On the morning of the hearing, the County submitted an Opposition to the motion for a
24 temporary restraining order, along with one declaration in support.  (Dkt. # 17, 17-1.)  The
25 Opposition noted that all seven plaintiffs had been offered appropriate shelter, six were already
26 placed, and one was planning to move into a placement that afternoon.  The Opposition urged the
27 Court to dissolve the restraining order as the Plaintiffs could not show a violation of their rights
28 under *Marin v. Boise*.

At the hearing on July 27, 2022, only two of the named Plaintiffs attended the hearing: Denise McCloud and Brian Baran. The other five plaintiffs did not attend as required by the Court's order. The County of Sonoma was represented by undersigned counsel and the City of Santa Rosa was represented by the City Attorney, Sue Gallagher.

At the hearing, the court noted that it had not had a chance to review the County's opposition or declaration. After hearing from the parties present at the hearing, the Court ordered the County to provide further information regarding the County's protocol to clear encampments and store individual's property. The County now hereby submits the information requested by the Court.

**COUNTY OF SONOMA PROTOCOL FOR CLEARING ENCAMPMENTS**

When responding to homeless encampments, the County of Sonoma Regional Parks Department follows protocols developed to comply with the constitutional requirements of *Martin v. Boise* and other applicable federal and state law. As outlined in the accompanying declarations of Ilana Stoelting, Will Gayowski, and Joshua A. Myers, those protocols establish that County social workers with the IMDT/HEART team provide outreach, an opportunity for assessment, and an offer of shelter placement to each individual in an encampment or camping on a trail <u>before</u> any enforcement action is taken. As part of this process, IMDT/HEART also provides each of the individuals they contact with a Notice of Rights informing them in writing of their right to adequate shelter. (*See* Declaration of Will Gayowski, filed concurrently herewith.) This is an individual assessment. Once IMDT/HEART completes its outreach and confirms that they have offered shelter to the individual, Regional Parks rangers are then required to provide reasonable notice in writing to individuals prior to taking any enforcement action against them for camping on public property. (*See* Declarations of Gayowski and Stoelting, filed concurrently herewith.) As part of the established process for responding to homeless encampments on the Joe Rodota Trail, Regional Parks serves and posts written Notices to Vacate and Notices of Planned Removal of Property before any effort is made to clear an encampment on the trail. (*Id*.) Although the federal injunction ended on December 31, 2021, the County continues to follow the same existing protocols that were followed under the injunction.

Since that time, and including the clearing involving Plaintiffs, the County has consistently used this same protocol for responding to homeless encampments or other individuals camping on the Joe Rodota Trail during 2022.  (*See* Declaration of Joshua A. Myers, filed concurrently herewith.)

**FACTUAL BACKGROUND REGARDING THE ENCAMPMENT WHERE PLAINTIFFS HAVE STAYED**

The Joe Rodota Trail is Sonoma County Regional Park property consisting of a bicycle and pedestrian path that extends from Santa Rosa into west Sonoma County.  At the time that the County served notices last week, there were two encampments on the Joe Rodota Trail.  (*See* Gaywoski Declaration.)  While some of this information repeats what was contained in the County's prior Opposition to Plaintiffs' Emergency Application for Temporary Restraining Order and Preliminary Injunction, further information has been added to address the Court's request for further information.  This section is based on the Declarations of Gayowski and Stoelting, filed concurrently herewith.

**The Wright Road Encampment**

The first encampment is located between the Joe Rodota Trail and Highway 12, east of Wright Rd.  This encampment first started with six to eight people at the end of May 2022.  The Sonoma County Homeless Encampment Access & Resource Team (HEART) began working with individuals at the encampment in early June and began placing people into shelters as space began available in June.  For more than a month, a number of individuals were on the wait list to be placed into shelter.  There have been approximately 16 to 20 people at this encampment that the County has worked with for two months to get them into shelter.  By the end of the day on July 26, 2022, all individuals living in this encampment have been placed into shelter by the County.

**The Roseland Avenue Encampment**

The second encampment is located on the Joe Rodota Trail between Dutton Avenue and Roseland Avenue in Santa Rosa, approximately a mile east of the first encampment.  This encampment formed overnight with approximately six tents on July 6, 2022.  Over the past three

weeks, it has grown to more than 23 tents or other dwelling units with an estimated 25 to 30 individuals. It appears that all of the seven named Plaintiffs in this lawsuit have been periodically living at this encampment.

In the days after first learning of the encampment near Roseland Avenue on July 6, 2022, the County received numerous complaints related to people and debris blocking the trail, human waste, fire hazards, and other health and safety concerns. By July 8, 2022, the County was forced to close the trail to the general public due to significant health and safety concerns of the public continuing to use the trail given the impact from the growing encampment at that location. **The County has been completing outreach at these encampments for over a month.**

During the time that individuals have been living at these two encampments, HEART has been working with all of the individuals that are willing to engage with the team to assess them for placement opportunities and get them placed into shelters as space is available.

Beginning last week, the County was able to increase its available options for shelter capacity so that a variety of shelter options are available for all of the existing individuals living at both encampments on the Joe Rodota Trail.

Beginning on July 20, 2022, the HEART team began offering a variety of shelter options to all of the individuals that were at both Joe Rodota Trail encampments and began placing the first of those individuals into shelter on July 21, 2022. All available HEART outreach team members along with County IMDT workers have been on the Joe Rodota Trail daily on July 20, 21, 22, 25, 26, 27, and 28, 2022, working with all encampment residents to offer individuals a variety of shelter options and assist with moving individuals into shelter as soon as they accept one of the placements that has been offered. A noticing date of July 22, 2022, was selected, which provided the individuals in the encampments with more than 72-hour notice to either accept placement or vacate and collect their property.

A copy of the notices provided, and the dates they were delivered to all people in the encampment, are attached as Exhibits to the Declaration of Ilana Stoelting, filed concurrently herewith.

/ / / /

**The County has placed more than 60 individuals into shelter from the encampments.**

Since July 21, 2022, the County has placed over 60 individuals into shelter from both encampments on the Joe Rodota Trail, including placements at Sam Jones Hall, Los Guillicos Village, County trailers located at the Sonoma County Fairgrounds, and local hotels.

**The County is providing storage for 90 days for all individuals at the encampments**

The County contracted with FS Global Solutions to provide personal property storage for all individuals living at the encampment who accept a shelter placement and are unable to take all of their property. FS Global has been on site July 26 and July 27 to providing storage for all individuals that have agreed to accept a shelter placement but are unable to take all of their belongings with them. The County will store property for individuals for up to 90 days.

As part of the established protocols for responding to homeless encampments on the Joe Rodota Trail, the Regional Parks Department served a Notice of Planned Removal of Property (Exhibit B to Stoelting Dec.) which informs individuals that if they do not pack up their belongings and move by the vacate date, any property left behind would be collected by the County. The notice also informs individuals that not all property will be stored by the County, and then goes on to provide examples of the types items that will not be stored (i.e., trash, soiled items, etc.). As part of this process, Regional Parks rangers try to confirm with any remaining individuals on the vacate date whether they are leaving behind any property and what they would like us to discard as garbage or abandoned. In the event Regional Parks rangers are not able to confirm with the owner what needs to be stored, Regional Park rangers sort through the items and inventory any property left behind that is not listed on the Notice of Planned Removal of Property as an item that will be immediately discarded.

Depending on the size of the encampment, sometimes the County will contract with an established vendor to box up, inventory, and transport the items being stored. With smaller encampments Regional Park rangers will complete this work and store the items in Regional Parks Storage. For the present encampments, the County contracted with FS Global Solutions to box up, inventory, and transport all property being stored to a storage unit within a mile of the location of the Roseland Avenue encampment. In all cases, property is stored by the County for

90 days and a post-removal notice is posted at the location where the property is collected informing individuals where they can go to collect the property. If the individual is present, Regional Parks rangers inform them directly where the property is being stored and let them know how they can retrieve their property. The information is also listed in the Notice of Planned Removal of Property, which is attached as Exhibit D to the Stoeltling declaration, filed concurrently herewith.

Because the clearing of the encampments scheduled for July 26, 2022 was postponed due to the temporary restraining order, County Regional Parks did not get to the point of completing the normal property collection, inventory, and storage of items remaining once an encampment is cleared. However, County Regional Parks and FS Global Solutions have continued to work with individuals at both encampments to store any excess property they have once they move into one of the shelter placements that have been offered to the individuals in the encampments. All persons who place property with the County and FS Global Solutions receive the previously described notice regarding how long their property will be stored and how they can retrieve their property.

**All individuals at both encampments have been offered shelter**

The County confirmed that everyone currently living in the two encampments on the Joe Rodota Trail had been offered a shelter placement by the County by July 28, 2022 at 10:00 a.m. The County is not aware of anyone currently living in either of the encampments who has not been offered a shelter placement, and in fact, most individuals have now accepted one of the shelter placements offered to them.

**All Seven Named Plaintiffs Have Been Provided a Shelter Placement**

All seven of the named Plaintiffs have been offered a variety of shelter options and six of them have already moved into the shelter placement that they accepted as follows:

    a.    <u>**Denise McCloud**</u>: Offered placement in one of the trailers at the Sonoma County Fairgrounds as well as two different hotels. As of July 27, she moved into a hotel where one of her friends had been placed. But, she could have moved into a trailer on July 25, 2022.

      b.      **Brian Barnard**: Offered and accepted placement in one of the trailers at the Sonoma County Fairgrounds. Moved in on July 25, 2022.

      c.      **Kristopher Anderson Francois**: Offered and accepted placement in one of the trailers at the Sonoma County Fairgrounds. Moved in on July 26, 2022.f

      d.      **Mercedes Juanita Flores**: Offered and accepted placement in hotel for a minimum of 30 days. Moved in on July 25, 2022.

      e.      **Tim Rucker**: Offered and accepted placement at Los Guillocos Village in one of the pallet homes. Moved in on July 26, 2022.

      f.      **Wilbert Ray Fields**: Offered and accepted placement in one of the trailers at the Sonoma County Fairgrounds. Moved in on July 26, 2022.

      g.      **John Clay**: Offered and accepted placement in hotel for a minimum of 30 days. Moved in on July 25, 2022.

## LEGAL ARGUMENT

### A. Temporary Restraining Order Should be Dissolved

To succeed on a motion for preliminary injunction, a party must show that (1) they are likely to succeed on the merits of their claim; (2) they will suffer irreparable harm in the absence of relief; (3) the balance of hardships tips in their favor; and (4) a preliminary injunction is in the public interest. See *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

When balancing both parties' harms, the court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation omitted). When the government is the target of the injunction, these factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts afford substantial judicial deference to public safety officials to make local public safety determinations. See *Yamaha Corp. of America v. State Bd. Of Equalization*, 19 Cal.4th 1 (1998); *Harrott v. County of Kings*, 25 Cal.4th 1138, 1155 (2001).

The Court issued its temporary restraining order based on the conclusion that the seven named Plaintiffs had raised serious questions going to the merits of their Eighth Amendment claim under *Martin v. City of Boise*, 920 F.3d 584, 617 (9th Cir. 2019) – namely Plaintiffs'

claims that they had not been offered adequate shelter prior to the noticed enforcement date of July 26, 2022, and that their property may be seized inappropriately.

*Martin v. Boise* held that the Eighth Amendment prohibits the government from criminalizing an involuntary act or condition if it is an unavoidable consequence of being homeless. If a governmental entity is to remove a homeless person from a location through threat of criminal prosecution, the governmental entity either must have shelter available for that person or demonstrate one of the exceptions in *Martin* applies. The *Martin* decision outlined some general types of enforcement actions that are still legally permissible even without providing adequate shelter. First, individuals who decline an offer of shelter, or reasonably have access to or the means to acquire shelter are not shielded from enforcement. Second, a governmental entity may continue to enforce rules against obstruction of public rights of way (streets and sidewalks) or the erection of certain kinds of structures. Third, "even where shelter is unavailable, an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular locations might well be constitutionally permissible." *Id*. at 617, fn. 8. The key is whether the local regulation "punishes a person for lacking the means to live out the 'universal and unavoidable consequences of being human' in the way the ordinance prescribes." *Id*.; *see also Gomes v. County of Kauai*, No. 20-00189 JMS-WRP, 2020 U.S. Dist. LEXIS 154766, at *9 (D. Haw. Aug. 26, 2020) (holding that the plaintiffs' legal challenge to citations they received under two county ordinances prohibiting sleeping and erecting certain structures in a county park did not violate the Eighth Amendment under *Martin*, even if it were true that the county lacked adequate shelter space for its homeless population because they could sleep in other public places in the county).

As the accompanying Declarations make clear, all individuals on the trail have been offered a variety of shelter options over the past week, and as of July 28, 2022, the County has placed over 60 individuals into shelter from the encampments on the trail. Most importantly for this proceeding, all seven of the named Plaintiffs have been offered a variety of shelter options and all have now been placed at a location that they voluntarily agreed to reside at for a period of time of 30 days to six months. Further, the County will continue to attempt to work with the

Plaintiffs and all other individuals offered temporary housing to find more permanent housing and to connect them with other social services.  (*See* Declaration of Will Gayowski.)

At this juncture, none of the Named Plaintiffs has standing to pursue injunctive relief against the County for the clearing of either encampment remain in the case.  Thus, the basis underlying the Court's injunction is no longer present.  The Court should dissolve the temporary restraining order entered on July 25, 2022.

**B.      Plaintiffs May Only Pursue Claims on their Behalf and Not for Others**

In addition, because Plaintiffs are Pro Se Litigants, they cannot pursue claims on behalf of others and the Court should only focus on the validity of their individual claims.  *See United States ex rel. Mergent Services v. Flaherty*, 540 F. 3d 89, 92 (2d Cir. 2008) ("Because [28 U.S.C. § 1654] permits parties to 'plead and conduct their own cases personally' ... we have held that 'an individual who is not licensed as an attorney may not appear on another person's behalf in other other's cause.'") As such, although "a nonattorney may appear in propria persona in his own behalf, that privilege is personal to him," and he has "no authority to appear as an attorney for others than himself." *C.E. Pope Equity Trust v. United States*, 818 F. 2d 696, 697 (9th Cir. 1987).

**CONCLUSION**

Based on the record and evidence before the Court, the County of Sonoma respectfully requests that the Court not continue the emergency temporary restraining order so that the County can resume plans to clear the remaining individuals from the encampments on the Joe Rodota Trail, clean the area, and reopen the bicycle and pedestrian trail to the public at large.

Dated: July 28, 2022                    ROBERT H. PITTMAN, County Counsel

By:  */s/ Joshua A. Myers*
     Joshua A. Myers
     Chief Deputy County Counsel
     Attorneys for Defendant
     County of Sonoma