UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE MCLOUD, et al., | Case No. 22-cv-04284-HSG |
| Plaintiffs, | **ORDER VACATING TEMPORARY RESTRAINING ORDER** |
| v. | Re: Dkt. Nos. 1, 6 |
| COUNTY OF SONOMA, et al., | |
| Defendants. | |

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On July 25, 2022, seven pro se Plaintiffs filed this action against Defendants County of Sonoma and City of Santa Rosa, as well as several individual employees of these entities.[1]  *See* Dkt. No. 1.  Plaintiffs allege that they are unhoused residents of a portion of the Joe Rodota Regional Trail in Santa Rosa, California.  Dkt. No. 1 at ¶¶ 1–6, 16.  They allege that on Friday, July 22, 2022, they were served eviction notices by Sonoma County Regional Park Rangers, which indicated that they had to relocate by Tuesday, July 26, 2022, at 8:00 a.m., or they could be cited, arrested, or face criminal prosecution.  *See id.* at ¶¶ 19, 25; *see also* Dkt. No. 6-1, Ex. C at A ("Notice to Vacate").  The Notice to Vacate stated that Plaintiffs "were provided an opportunity for assessment and an opportunity to be placed in adequate shelter by the County IMDT Team and/or other service providers."  *See* Notice to Vacate.  However, Plaintiffs allege that they were not offered alternative shelter, and do not believe Defendants have "genuine plan[s]" to "stor[e] people's property . . . ."  *See* Dkt. No. 1 at ¶¶ 19, 23–24, 26–27, 32.  To the contrary, Plaintiffs allege that regional park rangers "have been destroying people's property . . . ."  *Id.* at ¶ 24.

---

[1] Plaintiffs include Denise McCloud, Brian Baran, Kristopher Anderson Francois, Mercedes Juanita Flores, Tim Rucker, Wilbert Ray Fields, and John Clay.

United States District Court
Northern District of California

United States District Court
Northern District of California

On the morning of July 25, 2022, Plaintiffs filed a complaint, motion for temporary restraining order, and motion for preliminary injunction enjoining Defendants from removing Plaintiffs from a section of the Joe Rodota Trail. Dkt. No. 1. They also filed a standalone document, styled as a motion for temporary restraining order. Dkt. No. 6. That same afternoon, the Court granted Plaintiffs' request for a temporary restraining order ("TRO") pending a hearing on July 27, the earliest available date. Dkt. No. 15. The Court explained that the TRO was necessary "solely to maintain the status quo until the earliest possible hearing on the merits of the TRO request." *See id.* at 2. At the July 27 hearing, Defendants indicated that they had filed a brief response to Plaintiffs' filings that morning. Dkt. No. 17. The Court directed Defendants to file a comprehensive response, including supporting declarations and evidence. *See* Dkt. No. 23. As of the date of this order, the TRO remains in place. Defendants urge that the TRO should be dissolved, and they should be allowed to resume clearing the remaining individuals from the Joe Rodota Trail so they may reopen the trail to the public as planned. *See* Dkt. No. 27. Plaintiffs respond that the TRO remains necessary for their protection. *See* Dkt. No. 28.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a temporary restraining order may enjoin conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839, n.7 (9th Cir. 2001). A plaintiff seeking preliminary relief must establish: (1) that she is likely to succeed on the merits; (2) that she is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. A court must find that "a certain threshold showing" is made on each of the four required elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Under the Ninth Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious questions going to the merits" if "a hardship balance [also] tips sharply towards the [movant],"

2

1   and "so long as the [movant] also shows that there is a likelihood of irreparable injury and that the

2   injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

3   Cir. 2011).

4   **III.   DISCUSSION**

5           Having considered Defendants' supplemental opposition to Plaintiffs' TRO request, Dkt.

6   No. 17, the Court finds that a TRO is no longer warranted under the circumstances.

7           *First*, Plaintiffs can no longer show that they are likely to suffer irreparable harm absent

8   the TRO.  At the July 27 hearing, Plaintiffs Denise McCloud and Brian Baran—the only two

9   Plaintiffs who appeared at the hearing—acknowledged that since the TRO was issued, Defendants

10  had offered them various shelter options.  Defendants have similarly confirmed that as of the date

11  of this order, all seven Plaintiffs have been offered and accepted placement in shelters in the form

12  of hotel rooms; trailers at the Sonoma County Fairgrounds; or pallet homes at Los Guillocos

13  Village.  *See* Dkt. No. 27 at 8–9; *see also* Dkt. No. 27-2 ("Gayowski Decl.") at ¶¶ 8–12, 16–17;

14  Dkt. No. 27-3 ("Stoelting Decl.") at ¶¶ 5–6.  Defendants explain that they have been able to place

15  over 60 people from the encampment into one of these forms of shelter.  *See* Gayowski Decl. at

16  ¶¶ 11–12.  The amount of time a person can stay in these accommodations varies, but ranges from

17  30 days to six months.  *See id.* at ¶ 13.  County social workers are also continuing outreach to

18  individuals at these temporary housing locations to assist them in obtaining more permanent

19  housing and access to other social services.  *See id.* at ¶ 14.  In short, Plaintiffs are no longer

20  residing in the encampment and have alternative shelter for at least the next 30 days.  In light of

21  this development, the Court cannot find that Plaintiffs would suffer any harm if Defendants

22  continued with their plans to clear the encampment.

23          *Second*, Plaintiffs have not shown a likelihood of success on the merits, or serious

24  questions going to the merits, of their claims.  Plaintiffs have asserted several different claims

25  challenging Defendants' plans to clear the encampment on the Joe Rodota Trail.  *See* Dkt. No. 1 at

26  ¶¶ 35–69.

27          Plaintiffs contend, based on the Ninth Circuit's holding in *Martin v. City of Boise*, that

28  Defendants' attempt to remove them from the encampment location on public land is a violation

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    of their Eighth Amendment rights.  This appears to be their strongest cause of action.  In *Martin*,

2    the Ninth Circuit held that "the Eighth Amendment's prohibition on cruel and unusual punishment

3    bars a city from prosecuting people criminally for sleeping outside on public property when those

4    people have no home or other shelter to go to."  920 F.3d 584, 603 (9th Cir. 2019).  The Court

5    concluded that "so long as there is a greater number of homeless individuals in [a jurisdiction]

6    than the number of available beds [in shelters], the jurisdiction cannot prosecute homeless

7    individuals for 'involuntarily sitting, lying, and sleeping in public."  *Id.* at 617 (quotation omitted)

8    (alteration in original).  In other words, the Ninth Circuit held that the government cannot

9    criminalize homelessness "on the false premise [individuals] had a choice in the matter."  *Id.*

10         Here, Plaintiffs allege that they were told they would be arrested if they did not leave the

11   trail.  *See* Dkt. No. 1 at ¶¶ 19, 25.  The Notice to Vacate similarly warned that individuals who did

12   not leave the trail by the deadline could be cited, arrested, or face criminal prosecution.  *See*

13   Notice to Vacate.  However, the record developed so far reflects that none of the Plaintiffs were

14   cited or arrested, suggests that Defendants have made adequate shelter options available to all

15   encampment residents, and establishes that in fact all seven Plaintiffs have accepted these

16   temporary placements.  The record further indicates that Defendants have been following a

17   protocol for clearing the encampment put in place in a prior case involving the County of Sonoma,

18   and intended to ensure compliance with constitutional requirements.  *See Vannucci v. County of*

19   *Sonoma*, Case No. 18-cv-01955-VC; *see also* Dkt. No. Dkt. No. 27-1 ("Myers Decl."), Ex. A.  For

20   example, County social workers reached out to make individual assessments of the needs of the

21   individuals residing on the Joe Rodota Trail and offered shelter placements to each of them before

22   any enforcement action was taken.  *See, e.g.*, Gayowski Decl. at ¶¶ 1–14,  & Exs. 1–4; Stoelting

23   Decl. at ¶¶ 3–9.  The County also provided written notice of the plans to clear the encampment,

24   the removal of property, and individuals' legal rights and opportunity to relocate.  *See* Stoelting

25   Decl., Exs. A–C.

26         To the extent Plaintiffs are concerned that their possessions will be taken during the

27   clearing and either destroyed or lost, *see* Dkt. No. 1 at ¶¶ 45–48, Defendants have explained the

28   protocol in place for storing individuals' property, including how they can retrieve it.  *See*

1    Gayowski Decl. at ¶ 15.  The County has contracted with FS Global Solutions to provide personal

2    property storage for a period of 90 days.  *Id.*  In addition to informing people in person about how

3    to retrieve their property, the County also will post a post-removal notice where the property is

4    collected with this information.  *See id.*; *see also* Stoelting Decl., Ex. D.  These procedures appear

5    to comply with legal requirements.  *See Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032–33

6    (9th Cir. 2012).

7         Plaintiffs have not explained why they believe they are likely to succeed on any of their

8    other claims.  For example, Plaintiffs challenge Defendants' actions as a violation of their First

9    Amendment right to free assembly.  The Court understands that Plaintiffs have created a sense of

10   community on the trail, but they have not cited any authority supporting their contention that

11   freedom of assembly somehow empowers them to congregate anywhere without restriction.  The

12   Court has examined Plaintiffs' claims and does not believe that they have made a showing of

13   likelihood of success on the merits sufficient to justify extending the TRO.

14        *Third*, the Court finds that the balance of the equities does not tip in Plaintiffs' favor.  The

15   question before the Court is not whether Defendants' approach is the ideal policy approach.

16   Instead, the Court's narrow inquiry is whether the Constitution forbids Defendants from

17   implementing a policy that they believe appropriately balances the important individual and

18   community rights implicated by encampments on public land.  *See Lavan*, 693 F.3d at 1033 ("This

19   appeal does not concern the power of the federal courts to constrain municipal governments from

20   addressing the deep and pressing problem of mass homelessness or to otherwise fulfill their

21   obligations to maintain public health and safety.").  The Court sees no compelling basis on the

22   record presented for supplanting Defendants' judgments regarding the difficult question of how

23   best to balance Plaintiffs' important legal rights with the rights of the public at large with respect

24   to access and use of the Joe Rodota Trail.  This is especially true now that Plaintiffs have been

25   offered and accepted shelter.

26   **IV.    CONCLUSION**

27        Accordingly, the temporary restraining order entered on July 25, 2022, is **VACATED**.

28   The Court understands that Plaintiffs are concerned that at least some of the shelters offered by the

*United States District Court*
*Northern District of California*

5

United States District Court
Northern District of California

1   County may only be temporary.  During the hearing, Plaintiff McCloud, for example, stated that

2   the hotel placements are only for 30 days.  And in their filings, Defendants appear to acknowledge

3   that the hotel vouchers "are good for up to 30 days."  *See* Dkt. No. Gayowski Decl. at ¶ 13.

4           The Court therefore **SETS** a hearing on August 18, 2022, at 2:00 p.m. to discuss Plaintiffs'

5   request for a preliminary injunction before the expiration of this 30 days.  At this point, the Court

6   does not believe further briefing is necessary.  Because the Court understands that Plaintiffs may

7   have some logistical difficulty appearing in person, the hearing will take place telephonically.  All

8   counsel and parties shall use the following dial-in information to access the call:

9           Dial-In:  888-808-6929;

10          Passcode:  6064255

11          For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where

12  at all possible, parties shall use landlines.  The Court cautions that because Plaintiffs are not

13  represented by counsel, this is not a class action and they may only pursue this case individually.

14  *See C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) (holding that pro se

15  litigant may not appear as an attorney for others).  Therefore, each Plaintiff is responsible for

16  pursuing his or her own case, and appearing at the August hearing date.

17          To ensure Plaintiffs receive this order as quickly as practicable, the Clerk is **DIRECTED** to

18  serve this order on the Plaintiffs by email at bbarnardknowledge@gmail.com;

19  kandersonfrancois@gmail.com; and timr9725@gmail.com.

20          **IT IS SO ORDERED.**

21  Dated:  July 29, 2022

22

23          HAYWOOD S. GILLIAM, JR.
            United States District Judge

24

25

26

27

28

6